<table>
<tr><td colspan="3" align="center">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL IX</td></tr>
<tr>
<td>BANCO POPULAR DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>FERDINAND MELÉNDEZ TORRES T/C/C FERDINAND ENRIQUE MELÉNDEZ TORRES, FERDINAND MELÉNDEZ ROMÁN, POR SÍ Y COMO MIEMBRO DE LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA CON NILSA MARINA TORRES, NILSA MARINA TORRES DÁVILA T/C/C NILSA M. TORRES DÁVILA POR SÍ Y COMO MIEMBRO DE LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA CON FERDINAND MELÉNDEZ ROMÁN<br><br>Peticionarios</td>
<td>TA2026CE00153</td>
<td>*CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso número: CG2022CV01767<br><br>Sobre: Ejecución de Hipoteca; Propiedad Residencia, Cobro de Dinero-Ordinario</td>
</tr>
</table>

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# **RESOLUCIÓN**

En San Juan, Puerto Rico, a 27 de febrero de 2026.

Comparece la parte peticionaria, Ferdinand Meléndez Torres y los demás codemandados de epígrafe, mediante el recurso de epígrafe y nos solicita que revoquemos una *Resolución Interlocutoria* emitida y notificada el 26 de noviembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas. Mediante esta, el foro primario declaró No Ha Lugar una *Moción de Desestimación [...]* presentada por la parte peticionaria.

Por los fundamentos que se exponen a continuación, se deniega la expedición del auto de *certiorari*.

**I**

El 31 de mayo de 2022, el Banco Popular de Puerto Rico (BPPR o parte recurrida) instó una *Demanda* sobre cobro de dinero y

ejecución de hipoteca por la vía ordinaria en contra de Ferdinand Meléndez Torres, por sí y en representación de la Sociedad Legal de Bienes Gananciales compuesta con Nilsa Marina Torres Dávila y demás codemandados de epígrafe (en conjunto, parte peticionaria).[1] Como remedio, el BPPR reclamó que el foro primario le ordenara a la parte peticionaria satisfacer el pago de la cuantía adeudada, ascendente a $254,240.69, más los intereses acumulados. Asimismo, reclamó la ejecución de la hipoteca que grava la finca objeto de litigio, mediante su venta en subasta pública.

Luego de múltiples incidencias procesales, que incluyeron la presentación de un escrito de *Contestación a Demanda y Reconvención*,[2] el 23 de octubre de 2025, la parte peticionaria presentó un escrito que tituló *Moción de Desestimación por Incumplimiento con la Ley 169 de 2016, 12 C.F.R. § 1024.41(f)*.[3] Esencialmente, la parte peticionaria basó la referida moción en los tres planteamientos siguientes:

> 1) Que el BPPR estaba impedido de presentar la *Demanda* de epígrafe. Ello, debido a que, al 28 de abril de 2022, existía una solicitud de mitigación de pérdida en curso, que, si bien estaba incompleta, debía ser considerada como completa de su faz o "facially complete", para efectos de las protecciones contra el *dual-tracking* contempladas en la sección 1024.41(f), como consecuencia de la aplicabilidad de la sección 1024.41(c)(2)(iv).
>
> 2) Que el BPPR estaba igualmente impedido de emplazar a la parte demandada el 22 de junio de 2022, como consecuencia de la certificación emitida por dicha institución bancaria, a los efectos de que el deudor había completado una solicitud de mitigación de pérdidas, según le fue notificado al foro primario el 11 de junio de 2022.
>
> 3) Que el BPPR violentó la sección 1024.41(e)(1) de la Regulación X, al notificar tardíamente y de mala fe, la carta oferta del *short sale* fechada el 3 de julio de 2025. En cuanto a este particular, es la postura de la parte peticionaria que la parte recurrida BPPR no cumplió con proveerle con los catorce (14) días que la

---

[1] Entrada núm. 1 del caso núm. CG2022CV01767 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] Entrada núm. 18 del caso núm. CG2022CV01767 del SUMAC.
[3] Entrada núm. 67 del caso núm. CG2022CV01767 del SUMAC.

reglamentación exige, como un mínimo legal para el cumplimiento.

Por su parte, el 21 de noviembre de 2025, la parte recurrida presentó un escrito de *Réplica a Solicitud de Desestimación.*[4] En síntesis, adujo que, mediante la moción de desestimación presentada, la parte peticionaria procuró inducir a error al foro *a quo*. Con respecto al primer planteamiento, subrayó que una solicitud de mitigación de pérdidas no se considera completa hasta tanto el deudor provea toda la información solicitada por el acreedor para evaluar su caso. En cuanto al segundo planteamiento sobre emplazamiento, adujo que es improcedente, toda vez que la comunicación que la parte peticionaria envió al BPPR el 28 de abril de 2022, no constituyó una solicitud completa de su faz. Por último, con relación al tercer planteamiento, expuso que es incorrecto, debido a que la sección 1024.41(e)(1) claramente estipula que en la carta se puede exigir que un prestatario acepte o rechace una oferta de opción de mitigación de pérdidas, no antes de catorce (14) días después de que el gestor haya ofrecido al prestatario una opción de mitigación de pérdidas.

Tras evaluar las posturas de ambas partes, el 26 de noviembre de 2025, el foro primario emitió y notificó la *Resolución Interlocutoria* recurrida.[5] Mediante esta, declaró No Ha Lugar la solicitud de desestimación presentada por la parte peticionaria.

En desacuerdo, el 11 de diciembre de 2025, la parte peticionaria presentó una *Moción de Reconsideración [...].*[6] Por su parte, el 7 de enero de 2025, la parte recurrida presentó una *Réplica a Moción de Reconsideración [...].*[7]

---

[4] Entrada núm. 72 del caso núm. CG2022CV01767 del SUMAC.
[5] Entrada núm. 73 del caso núm. CG2022CV01767 del SUMAC.
[6] Entrada núm. 75 del caso núm. CG2022CV01767 del SUMAC.
[7] Entrada núm. 77 del caso núm. CG2022CV01767 del SUMAC.

Luego de considerar ambos planteamientos, el foro *a quo* declaró No Ha Lugar la solicitud de reconsideración instada por la parte peticionaria. Ello, mediante una *Resolución Interlocutoria* emitida y notificada el 9 de enero de 2026.[8]

Todavía inconforme, el 10 de febrero de 2026, el peticionario acudió ante nos mediante el recurso de epígrafe, en el que adujo que el foro *a quo* cometió los siguientes errores:

> Erró el foro *a quo* al no determinar que la solicitud de mitigación de pérdidas del aquí peticionario era una que estaba facialmente completada activando las protecciones contra la presentación de la demanda.

> Erró el foro *a quo* al no desestimar la demanda cuando surge del expediente judicial que el 10 de enero de 2022 [...] había una solicitud de mitigación de pérdida completa y el BPPR aun así procedió a emplazar a los demandados, en una acción prohibida de *dual tracking*.

Tras una evaluación preliminar del recurso, el 12 de febrero de 2026, emitimos y notificamos una *Resolución*. En virtud de esta, dispusimos que la recurrida tendría un término de diez (10) días para presentar su posición en cuanto a los méritos del recurso.

Así las cosas, el 20 de febrero de 2026, el BPPR presentó una *Moción en Solicitud de Prórroga*. Mediante esta, informó que se encontraba en conversaciones transaccionales con la parte peticionaria. En consideración a ello, solicitó un término adicional de veinte (20) días para presentarnos su comparecencia escrita, en caso de no llegar a un acuerdo.

Con el propósito de lograr el más justo y eficiente despacho del asunto ante nuestra consideración,[9] procedemos a disponer del recurso del epígrafe.

---

[8] Entrada núm. 78 del caso núm. CG2022CV01767 del SUMAC.

[9] Véase la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7(B)(5), la cual dispone lo siguiente: "El Tribunal de Apelaciones tendrá facultad para prescindir de términos no jurisdicciones, escritos, notificaciones o procedimientos específicos en cualquier caso ante su consideración, con el propósito de lograr su más justo y eficiente despacho, y proveer el más amplio acceso al tribunal, de forma que no se impida impartir justicia apelativa a la ciudadanía".

## II

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera Gómez v. Arcos Dorados, Inc.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

> [. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público. Así también, la referida disposición establece que este Foro podría ejercer su discreción para revisar resoluciones y órdenes interlocutorias en aquellas circunstancias en las que revisar el dictamen evitaría un

irremediable fracaso de la justicia, entre otras contadas excepciones.

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023); *Rivera Gómez v. Arcos Dorados, Inc.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra*. *Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A)   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B)   Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C)   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D)   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E)   Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F)   Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G)   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).

Por tanto, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

A la luz de la normativa antes expuesta, procedemos a disponer del caso ante nuestra consideración.

**III**

Sin lugar a duda, el recurso de *certiorari* es el vehículo procesal adecuado para procurar la revisión de la *Resolución Interlocutoria* recurrida, de conformidad con la Regla 52.1 de Procedimiento Civil, *supra*. Ello, por tratarse de la denegatoria de una moción de carácter dispositivo. Sin embargo, luego de evaluar el recurso ante nos a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra*, rechazamos ejercer nuestra discreción revisora para variar la determinación recurrida.

Mediante los señalamientos de error formulados, la parte peticionaria plantea que el foro primario erró al no determinar que

su solicitud de mitigación de pérdidas estaba completada de su faz, lo cual, a su juicio, activó las protecciones contra la presentación de una demanda en su contra. Asimismo, que el foro *a quo* incidió al no desestimar la demanda, cuando surge del expediente judicial que la solicitud de mitigación de pérdidas estaba completa desde el 10 de enero de 2022. En consideración a lo anterior, la parte peticionaria considera que el BPPR erróneamente procedió a emplazarles, lo cual constituyó una acción prohibida de *dual tracking.*

Así las cosas, luego de examinar la *Resolución Interlocutoria* recurrida, no consideramos que el foro primario actuara con parcialidad, que incurriera en abuso de discreción o que emitiera un dictamen contrario a derecho. Así también, de un examen de las particularidades de este caso, tampoco surge que, de alguna manera, expedir el auto discrecional solicitado evite un fracaso a la justicia. En virtud de lo antes mencionado, y analizado el caso de autos a la luz de la totalidad de las circunstancias, consideramos que no procede nuestra intervención. En fin, procede denegar el auto discrecional solicitado.

**IV**

Por los fundamentos que anteceden, denegamos la expedición del auto de *certiorari.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones